IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-02426-RBJ

INDEPENDENCE INSTITUTE, a Colorado nonprofit corporation,

   Plaintiff,

v.

SCOTT GESSLER, in his official capacity as Colorado Secretary of State,

   Defendant.

---

ORDER

---

This case concerns a television advertisement that the Independence Institute wishes to

broadcast before the upcoming gubernatorial election.  The Institute stipulates that its ad is an

"electioneering communication" under Colorado law and, as such, the Institute must comply

with certain reporting and disclosure requirements.  However, because the ad constitutes

"genuine issue advocacy" as opposed to advocacy for or against any candidate, the Institute

claims that application of these requirements would be unconstitutional.  The Secretary of State,

who administers and enforces Colorado's election laws, stipulates that the ad can be classified as

genuine issue advocacy but maintains that application of the reporting and disclosure

requirements is constitutional.  I agree with the Secretary.

1

**FACTS**

The advertisement.  The Independence Institute is a Colorado nonprofit corporation organized under Section 501(c)(3) of the Internal Revenue Code that conducts research and educates the public on various aspects of public policy, including taxation, education policy, healthcare, and environmental issues.  It wishes to run a television advertisement prior to the November 4, 2014 general election that will urge viewers to call Governor John Hickenlooper and ask him to support an audit of Colorado's Health Benefit Exchange.  The 30-second ad, which would be distributed over local broadcast television in Colorado, would read as follows:

| Audio | Visual |
|---|---|
| Doctors recommend a regular check up to ensure good health. | *Video of doctor and mother with child.* |
| Yet thousands of Coloradoans lost their health insurance due to the new federal law. | *Headlines of lost insurance stories.* |
| Many had to use the state's government-run health exchange to find new insurance.<br><br>Now there's talk of a new $13 million fee on your insurance.<br><br>It's time for a check up for Colorado's health care exchange. | *Denver Post headline "Colorado health exchange staff propose $13M fee on all with insurance."* |
| Call Governor Hickenlooper and tell him to support legislation to audit the state's health care exchange. | *Call Gov. Hickenlooper at (303) 866-2471. Tell him to support an audit of the health care exchange.* |
| INDEPENDENCE INSTITUTE IS RESPONSIBLE FOR THE CONTENT OF THIS ADVERTISING. | *Paid for by The Independence Institute, Jon Caldara, President. 303-279-6536. www.independenceinstitute.org* |

Colorado law.  In 2002 Colorado's voters approved what has been incorporated as Article XXVIII of the Constitution of the State of Colorado.  Section 1, entitled "Purposes and findings," states:

The people of the state of Colorado hereby find and declare that large campaign contributions to political candidates create the potential for corruption and the appearance of corruption; that large campaign contributions made to influence election outcomes allow wealthy individuals, corporations, and special interest groups to exercise a disproportionate level of influence over the political process; that the rising costs of campaigning for political office prevent qualified citizens from running for political office; that because of the use of early voting in Colorado timely notice of independent expenditures is essential for informing the electorate; that in recent years the advent of significant spending on electioneering communications, as defined herein, has frustrated the purpose of existing campaign finance requirements; that independent research has demonstrated that the vast majority of televised electioneering communications goes beyond issue discussion to express electoral advocacy; that political contributions from corporate treasuries are not an indication of popular support for the corporation's political ideas and can unfairly influence the outcome of Colorado elections; and that the interests of the public are best served by limiting campaign contributions, establishing campaign spending limits, providing for full and timely disclosure of campaign contributions, independent expenditures, and funding of electioneering communications, and strong enforcement of campaign finance requirements.

Among other things, Amendment XXVIII and Colorado's Fair Campaign Practices Act,

C.R.S. § 1-45-101 *et seq.* place certain restrictions on "electioneering communications."  An

electioneering communication is

any communication broadcasted by television or radio, printed in a newspaper or on a billboard, directly mailed or delivered by hand to personal residences or otherwise distributed that:

(I) Unambiguously refers to any candidate; and

(II) Is broadcasted, printed, mailed, delivered, or distributed within thirty days before a primary election or sixty days before a general election; and

(III) Is broadcasted to, printed in a newspaper distributed to, mailed to, delivered by hand to, or otherwise distributed to an audience that includes members of the electorate for such public office.

Colo. Const. art. XXVIII, § 2(7)(a); C.R.S. § 1-45-103(9).

The term "electioneering communication" does not include:

3

(I) Any news articles, editorial endorsements, opinion or commentary writings, or letters to the editor printed in a newspaper, magazine or other periodical not owned or controlled by a candidate or political party;

(II) Any editorial endorsements or opinions aired by a broadcast facility not owned or controlled by a candidate or political party;

(III) Any communication by persons made in the regular course and scope of their business or any communication made by a membership organization solely to members of such organization and their families;

(IV) Any communication that refers to any candidate only as part of the popular name of a bill or statute.

Colo. Const. art. XXVIII, § 2(7)(b); C.R.S. § 1-45-103(9).

Here, both parties agree that the Institute's proposed advertisement is an "electioneering communication." It unambiguously refers to a candidate, Gov. Hickenlooper, who is seeking re-election. It will be broadcasted within 60 days before the November 4, 2014 election. It will be broadcast to a wide television audience including members of the electorate who will decide who will be Colorado's next governor. None of the four exemptions applies.

Because the Independence Institute acknowledges that it will spend more than $1,000 on the ad, it must submit reports to the Colorado Secretary of State including its spending on the ad and the name, address, occupation, and employer of any person who contributed more than $250 to fund it. Article XXVIII, §6(1). The Fair Campaign Practices Act governs the timing and content of such reports. C.R.S. § 1-45-108. As of the date of this order it appears that there will be two required reports, the first on October 27, 2014 and the second, after the election, on December 4, 2014. *See* Secretary's Brief [ECF No. 22] at 8.

Filing the reports is itself something of a burden on the Institute's ability to broadcast the ad. However, the bigger burden and the main reason for this case is the requirement to identify donors. This would not be all donors to the Independence Institute. Rather, it would be donors

4

who contribute $250 or more and whose contributions are specifically earmarked to support this advertisement.  Code of Colorado Regulations § 1505-6:11.1.  The Institute contends that having to identify any donors violates those individuals' rights of association and privacy, and if that requirement is sustained in this case, the ad will not be broadcast.[1]

The Independence Institute filed this action for declaratory judgment and injunctive relief on September 2, 2014 and shortly thereafter filed a motion for a preliminary injunction. However, the parties have since jointly asked the Court to consider the motion as one for summary judgment, allowing the Secretary to file a cross-motion for summary judgment and allowing the parties to obtain a final judgment as to whether the Secretary will be permanently enjoined from enforcing the foregoing reporting and disclosure requirements of Colorado law.

## LEGAL STANDARD

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'"  *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008) (quoting Fed. R. Civ. P. 56(c)).  The parties stipulate, and the Court agrees, that there is no fact dispute that would preclude the entry of summary judgment.

---

[1]  Any person found to have violated the disclosure provisions of Section 6 of Amendment XXVIII is liable for fifty dollars per day for each day the required information fails to be filed.  *Id.* § 10(2)(a); *see also* C.R.S. § 1-45-111.5(c).  The fine is a moot point here, because the Institute has made it clear that it will not broadcast the ad unless the reporting and disclosure requirements are determined to be unconstitutional.

**ANALYSIS**

To begin, and just to be clear, this case is not about preventing the Independence Institute from speaking on the issues of the day.  It is not about prohibiting the Institute from broadcasting its advertisement.  The Institute is free to broadcast its advertisement so long as it complies with the reporting and disclosure requirements of Amendment XXVIII.  Moreover, the Institute could have broadcast the ad without any reporting or disclosure requirements more than 60 days before the November 4, 2014 election.  It can likewise broadcast the ad without any reporting or disclosure requirements after the election.  In fact, it could broadcast the advertisement today without the reporting or disclosure requirements if it did not refer unambiguously to a candidate presently running for office.

Rather, in the words of the Supreme Court, while "[d]isclaimer and disclosure requirements may burden the ability to speak," they "'impose no ceiling on campaign-related activities,' and 'do not prevent anyone from speaking.'"  *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 366 (2010) (quoting *Buckley v. Valeo*, 424 U.S. 1, 65 (1976) and *McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 201 (2003)).

Thus, it has long been held that reporting and disclosure requirements are subject to a different standard of scrutiny than restrictions on one's ability to speak.  Because "disclosure is a less restrictive alternative to more comprehensive regulations of speech," *Citizens United*, 558 U.S. at 369, the Supreme Court "has subjected these requirements to 'exacting scrutiny,' which requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest," *id.* at 366–67 (quoting *Buckley*, 424 U.S. at 64, 66).

*Buckley* upheld the disclosure and reporting requirements of the Federal Election

Campaign Act of 1971 ("FECA") against a constitutional challenge.  In doing so it recognized

that disclosure requirements serve important governmental interests in (1) providing voters with

information useful in their evaluation of candidates; (2) deterring corruption and the appearance

of corruption; and (3) gathering data necessary to detect violations of contribution limitations.

424 U.S. at 66–67.  Similar interests were reflected in the stated purposes of Amendment

XXVIII.  The Amendment provides transparency to the voters by requiring that the identity of

the persons or organizations paying for the ad—i.e., those speaking—be disclosed.

In *McConnell* the Court upheld a facial challenge to the reporting and disclosure

requirements created by the Bipartisan Campaign Reform Act of 2002 ("BCRA").  These BCRA

provisions are substantially similar to the Colorado law at issue here.  Under BCRA, individuals

and organizations are required to report the identities of those who engage in "electioneering

communications," a term coined in the statute and defined to mean any broadcast, cable, or

satellite communication which

> (I) refers to a clearly identified candidate for Federal office;
> (II) is made within—
>
>> (aa) 60 days before a general, special, or runoff election for the office
>> sought by the candidate; or
>>
>> (bb) 30 days before a primary or preference election, or a convention or
>> caucus of a political party that has authority to nominate a candidate, for
>> the office sought by the candidate; and
>
> (III) in the case of a communication which refers to a candidate for an office other
> than President or Vice President, is targeted to the relevant electorate.

52 U.S.C. § 30104(f)(3)(A).  A communication is considered "targeted to the relevant electorate" if it could be received by 50,000 or more individuals in the district or State the candidate seeks to represent.  *Id.* § 30104(f)(3)(C).

The *McConnell* plaintiffs challenged the scope of the term "electioneering communication" on the grounds that it did not differentiate between express advocacy and issue advocacy, contending that they possessed "an inviolable First Amendment right to engage in the latter category of speech."  540 U.S. at 190.  The plaintiffs maintained that "Congress cannot constitutionally require disclosure of . . . 'electioneering communications' without making an exception for those 'communications' that do not meet [the] definition of express advocacy" as established in *Buckley*.  *Id.*  The Supreme Court disagreed.  It explained that "[i]n narrowly reading the FECA provisions in *Buckley* to avoid problems of vagueness and overbreadth, [the Supreme Court] nowhere suggested that a statute that was neither vague nor overbroad would be required to toe the same express advocacy line."  *Id.* at 192.

The Court did, however, acknowledge that "compelled disclosures may impose an unconstitutional burden on the freedom to associate in support of a particular cause."  *Id.* at 198.  In such cases, the would-be speaker may bring an as-applied challenge and need only show "a reasonable probability that the compelled disclosure of [an organization's] contributors' names will subject them to threats, harassment, or reprisals from either Government officials or private parties."  *Id.* (quoting *Buckley*, 424 U.S. at 74).  Notably, the Independence Institute has

stipulated that it does not contend in this case that its donors would be subject to threats,

harassment, or reprisals if their identities were disclosed.[2]

Though the plaintiff frames its challenge as "as-applied," its argument rests on the same

theory as the facial challenge rejected in *McConnell*.  Counsel candidly acknowledges that its

argument applies not just to the proposed ad but to any genuine issue ad that meets the statutory

definition of an electioneering communication.  But "[i]n general, a plaintiff cannot successfully

bring an as-applied challenge to a statutory provision based on the same factual and legal

arguments the Supreme Court expressly considered when rejecting a facial challenge to that

provision.  Doing so is not so much an as-applied challenge as it is an argument for overruling a

precedent." *Republican Nat. Comm. v. Fed. Election Comm'n*, 698 F. Supp. 2d 150, 157

(D.D.C. 2010) (three-judge court), *aff'd,* 130 S. Ct. 3544 (U.S. 2010).

The plaintiff attempts to distinguish this case by focusing on the ads at issue in

*McConnell*, explaining that BCRA was addressing a problem that arose out of *Buckley*, that the

use of "magic words" of express advocacy had not proven effective for identifying speech that is

"unambiguously campaign related."  According to the plaintiff, since its speech is

unambiguously *not* campaign related, the problems that BCRA addressed need not be considered

in this "as-applied" challenge.  This reasoning undermines the plaintiff's position, for it was

because of the inability to effectively distinguish between campaign-related speech and issue

---

[2] The plaintiff maintains that its donors' associational interests are at issue even if the donors are not
subject to threats, harassment, or reprisals.  However, the Supreme Court already addressed this argument
in *Buckley*.  The *Buckley* Court acknowledged the significant privacy interest in one's associations and, in
doing so, bumped up the level of scrutiny under which to review disclosure requirements from rational
basis to exacting scrutiny.  *See* 424 U.S. at 64–68.  In effect, the associational interests of the
Independence Institute's donors have already been accounted for.  While the Supreme Court left the door
open to future as-applied challenges where donors face a probability of threats, harassment, or reprisal,
the donors' more general interest in privacy is subsumed in the level of scrutiny upon which the Court
conducts its analysis.

advocacy that BCRA enacted an objective definition of "electioneering communication."  The

*McConnell* Court held that this definition was facially constitutional in spite of claims that it

might capture non-campaign related speech.  To be able to bring a so-called "as-applied"

challenge on this basis, a challenge that would inevitably reopen the floodgates to subjective

review of all arguably political speech made close in time to an election, is exactly the type of

problem that BCRA (and the *McConnell* Court) hoped to resolve.  The plaintiff has made no true

distinction between the challenge in *McConnell*—that issue advocacy must be distinguished

from express advocacy—and its argument before this Court.  As such, the plaintiff's challenge

must fail for the same reasons the facial challenge failed in *McConnell*.

In any event, *Citizens United* did involve, among other things, an "as-applied" challenge

to the disclosure requirements of BCRA.  Citizens United contended that those requirements

must be confined to speech that amounts to express advocacy for a political candidate or its

functional equivalent.  The Court disagreed:

> The Court has explained that disclosure is a less restrictive alternative to more
> comprehensive regulations of speech. . . . [W]e reject Citizens United's
> contention that the disclosure requirements must be limited to speech that is the
> functional equivalent of express advocacy. . . . Even if the ads only pertain to a
> commercial transaction, the public has an interest in knowing who is speaking
> about a candidate shortly before an election.

558 U.S. at 369 (internal citations omitted).  In so holding, the Court referenced its decisions in a

number of cases, including *McConnell*, as well as *United States v. Harriss*, 347 U.S. 612 (1954),

a case in which the Court upheld registration and disclosure requirements for lobbyists.  *See id.*

The plaintiff attempts to distinguish its claim from the one addressed in *Citizens United*.

It maintains that it is not arguing that disclosure requirements must be confined to speech that

amounts to express advocacy or its functional equivalent, but instead that such requirements

*cannot* be applied to pure issue speech, a contention that it claims the Supreme Court has never

explicitly addressed.  That is not entirely true.  The Supreme Court did, for example, uphold

disclosure requirements in the context of lobbying, perhaps the epitome of issue speech.  In

approving the Federal Regulation of Lobbying Act, the Court noted that the Act did not "prohibit

these pressures" but "merely provided for a modicum of information" from those who attempt to

influence legislation through lobbying.  347 U.S. at 625.  I have also noted that the *McConnell*

Court held that the First Amendment does not "erect[] a rigid barrier between express and so-

called issue advocacy,"  540 U.S. at 193, and that the *Citizens United* Court rejected an as-

applied challenge brought on the grounds that the type of speech should determine the duty of

disclosure.

The plaintiff would like us to review its proposed advertisement and determine whether

Colorado voters have a sufficient interest in knowing who is speaking about Governor

Hickenlooper when the speech is said not to be "campaign-related."  However, the Supreme

Court has held that a sufficient interest exists with respect to speech that references a candidate

when made close in time to the election.  There is no need for this Court to go any further with

respect to the government's interest.

Moreover, every circuit court to have analyzed this issue since *Citizens United* has come

to the same conclusion, that the distinction between issue speech and express advocacy has no

place in the context of disclosure requirements.  *See Ctr. for Individual Freedom v. Madigan*,

697 F.3d 464, 484 (7th Cir. 2012) ("*Citizens United* made clear that the wooden distinction

between express advocacy and issue discussion does not apply in the disclosure context."); *Nat'l

Org. for Marriage v. McKee*, 649 F.3d 34, 54–55 (1st Cir. 2011) ("We find it reasonably clear, in

11

light of *Citizens United*, that the distinction between issue discussion and express advocacy has

no place in First Amendment review of these sorts of disclosure-oriented laws."); *Human Life of*

*Washington Inc. v. Brumsickle*, 624 F.3d 990, 1016 (9th Cir. 2010) ("Given the Court's analysis

in *Citizens United,* and its holding that the government may impose disclosure requirements on

speech, the position that disclosure requirements cannot constitutionally reach issue advocacy is

unsupportable."); *see also Vermont Right to Life Comm., Inc. v. Sorrell*, 758 F.3d 118, 132 (2d

Cir. 2014) ("*Citizens United* removed any lingering uncertainty concerning the reach of

constitutional limitations in this context.  In *Citizens United*, the Supreme Court expressly

rejected the 'contention that the disclosure requirements must be limited to speech that is the

functional equivalent of express advocacy,' because disclosure is a less restrictive strategy for

deterring corruption and informing the electorate."); *Iowa Right To Life Comm., Inc. v. Tooker*,

717 F.3d 576, 591 n.1 (8th Cir. 2013) *cert. denied,* 134 S. Ct. 1787 (U.S. 2014); *The Real Truth*

*About Abortion, Inc. v. Fed. Election Comm'n*, 681 F.3d 544, 551–52 (4th Cir. 2012) *cert.*

*denied,* 133 S. Ct. 841 (U.S. 2013).

Closer to home, the Tenth Circuit has interpreted this portion of the *Citizens United*

opinion as a signal that the Supreme Court "upheld federal disclaimer and disclosure

requirements applicable to *all* 'electioneering communications.'"  *Free Speech v. Fed. Election*

*Comm'n*, 720 F.3d 788, 795 (10th Cir. 2013), *cert. denied,* 134 S. Ct. 2288 (U.S. 2014)

(emphasis in original) (citation omitted).  The Tenth Circuit was not addressing the question

presented in this case.  Nevertheless, I note its conclusion that "in addressing the permissible

scope of disclosure requirements, the Supreme Court . . . found that disclosure requirements

could extend beyond speech that is the 'functional equivalent of express advocacy' to address

even ads that 'only pertain to a commercial transaction.'" *Id.* (quoting *Citizens United*, 558 U.S. at 369.

Earlier this month a district court in the District of Columbia addressed a suit like the present case, also brought by the Independence Institute. *Independence Institute v. Fed. Election Comm'n*, No. 14-1500 (CKK), 2014 WL 4959403 (D.D.C. Oct. 6, 2014). The Independence Institute wished to produce and broadcast a radio advertisement that would ask the current United States Senators from Colorado – one of whom, Senator Udall, is up for reelection in the November 4, 2014 general election – to support the Justice Safety Valve Act. The proposed ad was similar to the ad involved in the present case except that it focused on criminal sentencing instead of health care laws. The Independence Institute (represented by the same counsel who represents it here) objected to BCRA's requirement that it disclose its donors on grounds all but identical to those it argues here. The court held, "Plaintiff's claims are foreclosed by clear United States Supreme Court precedent, principally by *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010)." 2014 WL 4959403 at *1.

The present case involves a challenge to the "electioneering communications" provisions of Amendment XXVIII of the Colorado Constitution, rather than those in BCRA, but the substance of the requirements is essentially the same. As it did in the D.C. case, the Independence Institute argues that the Supreme Court's comments in *Citizens United* on the application of disclosure requirements to speech other than express advocacy or its functional equivalent were "dicta." But even if they were dicta (a contention that I question), this Court is "bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly

when the dicta is recent and not enfeebled by later statements." *Peterson v. Martinez*, 707 F.3d 1197, 1210 (10th Cir. 2013).

The Independence Institute also attempts to distinguish *Citizens United* on grounds that (1) the ads in *Citizen United* constituted express advocacy, not genuine issue speech; (2) the ads in *Citizens United* spoke of a candidate (Hilary Clinton) pejoratively, whereas the ads promoted by the Independence Institute say nothing pejorative about Governor Hickenlooper; and (3) it is a 501(c)(3) organization whereas Citizens United is a 501(c)(4) organization. These all are distinctions without a difference.

I do not agree that the Supreme Court viewed the *Hillary* ads as express advocacy or its functional equivalent. *See Independence Institute*, 2014 WL 4959403 at *4. But even if such a characterization of those ads were correct, the Court clearly indicated that disclosure requirements are not limited to speech that is the functional equivalent of express advocacy.

Similarly, whether the ads comment pejoratively about a candidate is not relevant. Although the Court remarked about the pejorative nature of the *Hillary* ads, the Court's ruling did not depend on this characterization. Rather, the Court focused on whether BCRA's requirements were met, i.e., whether the speech referenced a candidate by name close in time to an election. If the requirements were met, the speaker's identity had to be disclosed.

Finally, the public's interest in knowing who is speaking is in no way related to an entity's organizational structure or its tax status. *See Madigan*, 697 F.3d at 490 ("[T]he voting 'public has an interest in knowing who is speaking about a candidate shortly before an election' whether that speaker is a political party, a nonprofit advocacy group, a for-profit corporation, a labor union, or an individual citizen.") (quoting *Citizens United*, 558 U.S. at 369). The

Independence Institute argues that because 501(c)(3) organizations may not engage in activity

supporting or opposing a candidate, the law should exempt them from the disclosure

requirements.  This begs the question.  The Secretary stipulates that the subject ad does not

support or oppose a candidate; if it did, then presumably the Independence Institute would not

promote it.

## CONCLUSION

The First Amended does not "erect[] a rigid barrier between express advocacy and so-

called issue advocacy." *McConnell*, 540 U.S. at 193.  In 2003 the *McConnell* Court rejected a

facial challenge to the breadth of the term "electioneering communication," and seven years later

the *Citizens United* Court rejected an as-applied challenge to the same term.  Both Courts

explicitly held that an electioneering communication need not constitute express advocacy or its

functional equivalent in order to trigger the disclosure requirements.  The Independence Institute

seeks to change the distinction, to require an exception for "pure issue advocacy" as compared to

"campaign related advocacy."  Yet the plaintiff presents no authority that would require, let

alone allow, this Court to find a constitutionally-mandated exception for its advertisement on the

grounds that it constitutes "pure issue advocacy."  Accordingly, because the plaintiff has not

succeeded on the merits of its claim, the application of the electioneering communications

requirements of Amendment XXVIII of the Colorado Constitution will not be enjoined by this

Court.

## ORDER

Plaintiff's Motion for Preliminary Injunction/Summary Judgment [ECF No. 13] is

DENIED, and defendant's Cross-Motion for Summary Judgment [ECF No. 21] is GRANTED.

Final judgment dismissing this case with prejudice is entered in favor of the defendant, Scott

Gessler in his official capacity as the Colorado Secretary of State.  As the prevailing party the

defendant is awarded his reasonable costs pursuant to Fed. R. Civ. P. 54(d)(1) and

D.C.COLO.LCivR 54.1.

DATED this 22nd day of October, 2014.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge

16